1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marla Richie on behalf of E.T.C., | No. CV-17-00145-TUC-LCK |
| Plaintiff, | **ORDER** |
| v. | |
| Nancy A. Berryhill, | |
| Defendant. | |

Plaintiff's mother brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). Plaintiff filed an opening brief, Defendant responded, and Plaintiff replied. (Docs. 11, 12, 14.) The parties consented to exercise of jurisdiction by a Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1). (Doc. 18.) Based on the pleadings and the administrative record, the Court affirms the Commissioner's decision.

## **PROCEDURAL AND FACTUAL HISTORY**

E.T.C.'s mother filed an application on his behalf for Supplemental Security Income (SSI) on April 16, 2015. (Administrative Record (AR) 118.) E.T.C. was born on April 26, 1999, making him almost 16 years of age at the time his SSI application was submitted. (AR 118.) E.T.C. alleged disability from December 1, 2010.[1] (AR 118.) The application was denied upon initial review (AR 59-71) and on reconsideration (AR 72-

---

[1] SSI benefits cannot be paid prior to the first month after an application is filed. 20 C.F.R. § 416.501. For E.T.C. that would be May 2015.

90). A hearing was held on March 29, 2016 (AR 32-57), after which the ALJ found that E.T.C. was not disabled (AR 13-26). The Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1-3.)

The ALJ found that E.T.C. had three serious impairments, mood disorder, polysubstance abuse disorder, and oppositional defiant disorder. (AR 16.) He concluded that E.T.C. did not have an impairment or combination of impairments that met, equaled or functionally equaled one of the listed impairments. (AR 17.) The ALJ determined that E.T.C. was markedly impaired in only one of the six functional equivalence domains, caring for yourself. (AR 24-25.) The ALJ found less than marked limitations in attending and completing tasks, and interacting and relating with others; and no limitations in the other three categories. (AR 20-26.)

## **STANDARD OF REVIEW**

A person under the age of 18 will be considered disabled and eligible for Supplemental Security Income (SSI) if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner employs a three-step sequential process to evaluate SSI claims for minors. First, if the claimant is engaged in substantial gainful activity, he is not disabled. 20 C.F.R. § 416.924(b). Second, if the claimant does not have a medically determinable severe impairment(s), in that the impairment does not cause more than minimal functional limitations, he is not disabled. 20 C.F.R. § 426.924(c). Third, if the claimant's impairment does not meet, medically equal, or functionally equal an impairment in the listings, he is not disabled. 20 C.F.R. § 426.924(d). There are six areas the Commissioner assesses for functional equivalence: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. 20 C.F.R. § 416.926a(b).

The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## **DISCUSSION**

Plaintiff argues that the ALJ erred at Step One when evaluating substantial gainful activity (Plaintiff's Issue 2); the ALJ erred at Step Two in evaluating E.T.C.'s severe impairments (Plaintiff's Issue 3); and the ALJ erred at Step Three in not finding E.T.C. had a marked limitation in attending and completing tasks, which would have led to a finding that E.T.C. met or functionally equaled the listings (Plaintiff's Issues 1, 4, and 5). Throughout the opening brief, Plaintiff focuses on numerous inconsistencies in the ALJ's decision but most of them are not relevant to the arguments raised in the brief. Therefore, the Court addresses only the legal and factual findings by the ALJ that are relevant to the issues before the Court.[2]

---

[2] In particular, Plaintiff focuses on record evidence to support the argument that E.T.C.'s mental health issues preceded his substance abuse. Even assuming this accurately reflects the record and the ALJ made erroneous findings on this point, it is not

**Step One: Substantial Gainful Activity**

Plaintiff argues that, in evaluating substantial gainful activity, the ALJ should not have mentioned E.T.C.'s testimony that he had worked side jobs and panhandled. Plaintiff argues these activities did not meet the guidelines for substantial gainful activity. After the ALJ cited E.T.C.'s testimony regarding ways he had obtained money in the past (AR 40, 45), the ALJ concluded that E.T.C. had NOT engaged in substantial gainful activity during the relevant period. (AR 16.) Because the ALJ found the criteria for substantial gainful activity was not met, as argued by Plaintiff, there is no identified error with this finding.

**Step Two: Severe Impairments**

Plaintiff argues that, at Step Two, the ALJ "improperly dismissed E.T.C.'s severe impairments although evidence supports his impairments were severe despite substance abuse." (Doc. 11 at 11.) Plaintiff further argues "the ALJ failed to adequately address the severe impairments." (*Id.*) Step Two is a "de minimis screening device" used to identify all impairments (singly or in combination) with more than a minimal impact on a person's functioning. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). After a claimant satisfies Step Two, the ALJ moves to Step Three to evaluate the claimant's functional abilities. The ALJ complied with this process.

Plaintiff agrees that E.T.C. has the three severe impairments found by the ALJ: mood disorder, polysubstance abuse disorder, and oppositional defiant disorder. Plaintiff does not argue that the ALJ should have found any other severe impairments at Step Two.[3] The Court finds no error as to the ALJ's Step Two findings. However, the Court

---

relevant to the issues before the Court. If the ALJ had found E.T.C. disabled, then he would have evaluated whether E.T.C. would still be disabled if he stopped using drugs. 20 C.F.R. § 416.935. Because he did not find E.T.C. disabled, he did not have to reach that question and neither does the Court.

[3] Plaintiff does not argue directly that the ALJ should have found any physical impairments severe at Step Two. However, in briefing Issue 5, Plaintiff discusses some of E.T.C.'s medical (non-mental health) issues. Although there are many medical records there are no medical opinions to support a finding of a severe physical impairment at Step Two. An impairment must last or be expected to last for 12 or more months and must be "established by objective medical evidence from an acceptable medical source." 20

will consider the evidence cited by Plaintiff within this argument when evaluating the ALJ's Step Three findings.

### Step Three: Attending and Completing Tasks

Plaintiff argues that he had a marked limitation in attending and completing tasks and the ALJ erred in finding otherwise. In order to functionally equal the listings, a minor claimant must have marked limitations in two functional domains (or one extreme limitation). The ALJ found E.T.C. had a marked limitation in only one domain. Plaintiff argues the ALJ erred when he found E.T.C. to have less than a marked limitation in attending and completing tasks. If E.T.C. was found to have this second marked limitation, he would functionally equal a listed impairment.

Plaintiff also argues that with a marked limitation in attending and completing tasks, he would have met Listing 112.04. Listing 112.04(B) requires two marked limitations, one of which is maintaining concentration, persistence and pace.[4] 20 C.F.R. § 404, Subpt. P, App. 1, §§ 112.04(B), 112.02(B). In light of the similarity between the categories of maintaining concentration, persistence, and pace, and attending and completing tasks, the Court's evaluation of these two claims is identical. The Court frames the question as one of attending and completing tasks to track the language used

---

C.F.R. §§ 416.909, 416.921. An impairment is not severe if it "causes no more than minimal functional limitations." 20 C.F.R. § 416.924. Because Plaintiff does not identify objective medical evidence from an acceptable medical source establishing that E.T.C. has any severe physical impairments expected to last at least twelve months, there was no error at Step Two with regard to physical impairments.

Plaintiff cites as error the ALJ's finding that "[t]esting indicated that the claimant might be lactose intolerant, causing abdominal pain and constipation." (AR 16.) The doctor's impression was one of lactose intolerance (AR 248, 251), and she recommended a trial of foregoing lactose (AR 251). Plaintiff is correct that no testing on lactose intolerance had been conducted at that time. This error is harmless because Plaintiff does not argue that this finding led to an error at Step Two or Three. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (finding error harmless because it would not alter the outcome of claimant's case) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 553 F.3d 1155, 1162 (9th Cir. 2008)).

[4] The ALJ found E.T.C. had a marked limitation in "caring for yourself," which correlates to one of Listing 112.04's four Paragraph B criteria, "personal functioning." 20 C.F.R. § 404, Subpt. P, App. 1, §§ 112.04(B), 112.02(B). Listing 112.04 also requires medical documentation of a persistent mood disorder. 20 C.F.R. § 404, Subpt. P, App. 1, § 112.04(A). Because the Court finds E.T.C. does not meet the paragraph B criteria, it does not assess whether he meets paragraph A.

- 5 -

by E.T.C.'s teachers in their evaluations. Additionally, Plaintiff contends the ALJ's findings at Step Three were not supported by substantial evidence as he cherry-picked the record to support his findings.

The ALJ explained the attending and completing tasks domain as encompassing:

> how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time.

(AR 21.) The ALJ supported his finding that E.T.C. had less than marked limitation in his ability to attend and complete tasks with the following explanation:

> The teacher reports that the claimant's motivation to attend school (due, possibly, to his ongoing substance use) was his primary barrier to attending and completing tasks. However, the undersigned notes that evaluation of the claimant did not demonstrate that the claimant suffered from any impairment that markedly interfered with his attention, and he was able to complete assessments when sober and motivated to do so.

(AR 22.)

The ALJ relied upon teacher reports from Canyon Rose Academy (AR 168-75) and Intermountain Academy (AR 199-206). In May 2015, an English teacher from Canyon Rose completed a questionnaire and opined that E.T.C. had a serious daily problem (4/5) in focusing the necessary length of time to complete a task, completing assignments, and working at the pace necessary to timely finish a task. (AR 170.) The teacher reported no problem in the other ten areas under attending and completing tasks. (*Id.*) The teacher noted that E.T.C. was not motivated to attend and complete work, thus, the "serious problems" were based on poor attendance and work avoidance when present. (AR 170, 175.) In August 2015, an Intermountain teacher completed a questionnaire and opined that E.T.C. had an obvious weekly problem (3/5) in focusing the necessary length of time to complete a task, refocusing when necessary, completing assignments, and working at the pace necessary to timely finish a task. (AR 201.) The teacher found slight or no problem in the other nine areas under attending and completing tasks. (*Id.*) The teacher reported the problems were due to lack of motivation and focus. (*Id.*)

The Court has reviewed the entirety of the record for information bearing on E.T.C.'s ability to attend and complete tasks. In the opening brief, Plaintiff cites portions of the record that rely upon E.T.C.'s self-reports to doctors. (*See* AR 316, 329.) The ALJ discounted E.T.C.'s symptom testimony because he found it was not consistent with the record as a whole.[5] (AR 18.) The ALJ also gave limited weight to the reports of E.T.C.'s mother. Those findings by the ALJ were not challenged in the opening brief. Therefore, the Court focuses upon the record evidence of mental status exams and others' observations of E.T.C.

During April 2013 and June 2014 intake appointments at Providence, E.T.C. was distractible, and his attention/concentration was mildly impaired. (AR 314, 327, 328.) In April 2013, E.T.C. was noted to have difficulty sustaining attention for tasks, lack of follow-through, poor concentration, and difficulty making decisions. (AR 329.) In November 2013, Dr. Sipp found E.T.C.'s concentration normal. (AR 305.) In July and August 2014, during behavioral health intakes at The Partnership, E.T.C.'s concentration was good and he remained responsive throughout the assessment. (AR 605, 612, 614.)

During a May 2015 psychiatric hospital admission, his concentration/attention was fair and he was generally on track, but the record noted impulsivity. (AR 549, 550, 557.) During psychiatric review appointments in April, May, June, July, and September 2015, E.T.C.'s attention was normal (AR 560, 562, 565, 567, 571); in January 2016, E.T.C.'s concentration was fair and, in February 2016, his attention was good (AR 579, 581). In December 2015, during a substance abuse assessment at The Partnership, E.T.C.'s concentration was good with active participation. (AR 620.) During December 2015, E.T.C. attended numerous 2- and 3-hour group sessions and the record documents his attention was fair or good each time. (AR 621, 623-25, 627, 628.)

During an in-patient stay at Oasis, from January to February 2016, E.T.C. was found to have a mildly distracted attention span and minimal cognitive difficulty. (AR

---

[5] In the Reply brief, Plaintiff argues that the ALJ did not discount E.T.C.'s symptom testimony. (Doc. 14 at 6.) The Court disagrees – the ALJ found E.T.C. not entirely credible in the second full paragraph on page 6 of his decision. (AR 18.)

- 7 -

860, 889, 891.) At the time of discharge, the record documented impulsivity and some difficulty focusing. (AR 849, 850.) Later that month, at a case management meeting, E.T.C.'s concentration was fair but he exhibited distracted behaviors. (AR 656.) In March 2016, E.T.C. was easily distracted and he had difficulty concentrating during a 2-hour group session (AR 661), but later in the month his concentration during the group was fair (AR 679).

During a July 2016 psychiatric assessment, the psychologist reported that E.T.C.'s attention, concentration, and working memory were a relative weakness, falling in the low average range. (AR 902.) His cognitive ability and processing speed was average. (AR 903.) The doctor noted that because of impulsivity, E.T.C. could be a compliance challenge in school (AR 904) ("may give in to momentary feelings"); and he had low motivation for academic achievement (*Id.*).

Plaintiff argues that the teacher evaluations, upon which the ALJ relied, and other record evidence, support finding a marked limitation in attending and completing tasks. A limitation is "marked" if it "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It is more than a moderate limitation but less than an extreme limitation. *Id.*

The evaluation completed by the teachers contained thirteen categories for attending and completing tasks. The teachers both found that E.T.C. had at most minimal problems in 9-10 of those categories. In three to four categories the teachers found obvious or serious problems, occurring daily or weekly. Because E.T.C. had no or mild impairment in so many of the categories, and no categories listed as very serious problems (5/5) it was not error for the ALJ to interpret the teacher's evaluations as establishing a less than marked impairment. "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).

The remainder of the record as summarized above also supports the ALJ's finding in this domain. There are repeated notations that E.T.C. had at least some difficulty with attention, distractibility, and impulsivity. However, numerous records reflect fair or good concentration by E.T.C. Overall, the record reflects mild to moderate difficulties in these areas. The most recent psychiatric evaluation noted that E.T.C.'s attention and concentration were a weakness but they still fell within the average range (at the low end). This does not reflect a marked impairment. *See* 20 C.F.R. § 416.926a(e)(2)(iii) (a marked limitation is reflected by a score "two standard deviations or more below the mean" on a test designed to evaluate functioning in the particular domain).

There is substantial record evidence to support the ALJ's finding that E.T.C. had less than a marked impairment in attending or completing tasks. *See Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). For that reason, the ALJ did not err in concluding that E.T.C. did not meet or functionally equal a listing.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). The Court concludes the ALJ did not err as to any of the claims raised by Plaintiff. Therefore, Plaintiff is not entitled to relief and the appeal is denied.

Accordingly, **IT IS ORDERED** that Plaintiff's case is **DISMISSED** and the Clerk of Court shall enter judgment.

Dated this 27th day of August, 2018.

Honorable Lynette C. Kimmins
United States Magistrate Judge